Johnson, J.
Jurisdiction to entertain applications of the nature of the one here involved is conferred upon the public utilities commission by Section 614-53, General Code, and the procedure to be followed is definitely laid down in the succeeding section.
Section 614-53 permits the granting of authority to issue stocks, bonds, notes and other evidences of indebtedness, when necessary for the acquisition of property, the construction, completion, extension or improvement of facilities, etc., under circum *196 stances specifically set forth. But the section does not permit the capitalization of replacements of equipment or any physical property. These must be kept up from income.
Attached to the supplemental application is the company’s general balance sheet of March 31, 1917. This discloses among the items of liability one of “accrued depreciation of equipment” amounting to $28,959,720.95.
The testimony showed that there had been recently a substantial increase in that item. From this it is argued that the company was then and had been engaged in capitalizing the cost of replacements; that, therefore, the authority granted by the commission to issue the proposed equipment-trust certificates violates the provisions of the sections of the General Code above referred to. Depreciation of course begins when equipment is put into service, and continues until it is retired. It does not all wear out at once, and except in cases of destructive accidents or unusual circumstances its wearing out is gradual, differing in different parts of the equipment. Under normal conditions, the necessity for replacements arises with comparative uniformity 'both as to extent and charge, and such should be met out of current income. But for unusual situations, and for retirements, it is necessary to create á fund to maintain existing conditions, and this is stated in the depreciation account. It is manifest that it would be wholly improper to allow the cost of necessary .replacements to be added to the capital liability of the corporation, while its entire income was being *197 consumed otherwise. It was evidently with this condition of things in mind that the legislature imposed upon the commission the duty of inquiring into the nature of the expenditures of the corpor ration and of determining what part thereof might be charged to capital account, for betterments, and what part had been expended for maintenance and replacements, and therefore required to be paid out of income.
In the case of People, ex rel. Binghamton L., H. & P. Co., v. Stevens, 203 N. Y., 7, the court of appeals of New York had before it a statute almost identical with ours. It is said, at page 21: “The question as to what- expenditures are a proper basis for permanent capitalization is an important one, always a proper and necessary subject for consideration, not alone by the directors of a corporation, but -by any commission that has authority to grant or withhold its consent to the issue of new stock or bonds which are to become a part of the corporation’s permanent capitalization.”
It was there shown that' the commission had authorized replacements to be capitalized, and that the applicant had not carried any account to provide that the retirements should be borne by income, and the court found that it was the duty of the commission to determine whether the stocks and bonds proposed by the relator were to secure money to pay floating indebtedness incurred in the ordinary running expenses of the corporation. In that case it was held that property paid for and charged to capital account, but which necessarily becomes obsolete or wholly worn out within a *198 period of years, should be renewed or replaced by setting aside from time to time an adequate amount in the nature of a sinking fund or that by some other system of financing the corporation should put upon, the purchaser from the corporation the expense not aloné of the daily maintenance of the plant but a just proportion of the expense of renewing and replacing that part of the plant which although not daily consumed must necessarily be practically consumed within a given time.
In the well-known case of City of Knoxville v. Knoxville Water Co., 212 U. S., 1, the court, referring to the company, said at page 13: “It is entitled to see that from earnings the value of the property invested is kept unimpaired, so that at the end of any given term of years the original investment remains as it was at the beginning. It is not only the right of the company to make such a provision, but it is" its duty to its bond and stockholders, and, in the case of a public service corporation at least, its plain duty to the public.”
In recognition of the wisdom of this general principle, with regard to public utilities, the general assembly of Ohio has provided by Sections 614-49 and 614-50, General Code, that every public utility shall carry a proper and adequate depreciation or deferred maintenance account, whenever the commission after investigation shall determine that a depreciation account can be reasonably required; also for the creation of a depreciation fund, which may be used for the purpose of renewing, restoring or substituting depreciated property in order to keep the plant in a state of efficiency. And it is *199 provided that the fund shall be disposed of upon the approval of the commission.
It would seem that the reasons for these statutory provisions would apply equally to railroads, and that the wisdom of the maintenance by the applicant company in this case of the accrued depreciation account referred to would be sufficiently justified, and is really required. The inference drawn by the plaintiffs in error from the presence of this item in the statement of the company is not warranted, although its growth and amount are so large and impressive as to challenge the attention and insistent inquiry of the commission. Such an account properly constituted does not represent an impairment of capital — it is a charge against income.
If this account, and all others, is carefully inquired into by the commission when applications and statements are filed with it, a service of great importance to the public and to stockholders will be rendered.
Now, in this case, the contention of the plaintiffs in error is that the record shows that the issue of the - certificates which is sought to be authorized will amount to a capitalization of the cost of replacements. There was considerable evidence introduced, including the statements of the company and the testimony of witnesses, touching the purposes for which the certificates are to be issued.
The commission has found and has included in its order that the issuance of these certificates was necessary and their proceeds reasonably required “for the acquisition of additional rolling stock *200 equipment and the extension and improvement of applicant’s facilities.” It has not found, and we are not cited to any evidence to such effect, that the equipment in the 1917 trust is for the replacement of retired equipment. There was considerable equipment retired, which must be provided against out of income.
If the expenditure so to be capitalized is for additional equipment, then of course the fund referred to in the item of accrued depreciation would not be used for such acquisition. It is the duty of the commission to carefully inquire into the entire situation and to determine the truth in such a matter, and when this has been done, and no abuse of discretion or similar fault is alleged, this court will not substitute its judgment for that of the commission, upon which the legislature has imposed the duty of rendering the valuable public service referred to. This principle has been established in Hocking Valley Ry. Co. v. Public Utilities Commission, 92 Ohio St., 362. There was in reality merely presented a question of fact to be determined from the evidence: Was the property which was put into the Equipment Trust of 1917 really to take the place of equipment worn out or retired, or was it intended to and did it actually extend and improve the company’s facilities ? Was it an addition to its substantial inventory of rolling stock? We are not able to find that the commission’s answer to that question is not sustained by the record.
The statutory provisions are clear and explicit, and when these are not shown to have been disregarded the proceeding must be approved. Nor *201 do we find that the provision in the order of the commission which permits the applicant to pledge the trust certificates at the státed ratio, pending their sale under the order, amounts to the creating of a double liability. The trust certificates are not the obligations of the trust company. The trust agreement expressly provides that the trust company shall not incur any obligation on the certificates or dividend warrants pertaining thereto. The certificates are the obligations of the railroad company. When sold the purchaser holds the obligation. When pledged as security for a loan the pledgee holds the certificates as • security for his loan. The terms of the arrangement, their wisdom, practicability and safety, are matters for the company, subject to the order and approval of the commission.
We have carefully considered the other assignments of error, but we do not find any error in the record, and the order of the commission will be affirmed.

Order affirmed.

. Nichols, C. J., Wanamaker, Newman, Jones, Matthias and Donahue, JJ., concur.